JONES, Chief District Judge,
concurring in part and dissenting in part:
I agree with my colleagues that as to the twelve posts that Nemet connected to real customers, the Amended Complaint fails to sufficiently plead a cause of action. The facts alleged do not show that as to these posts it is plausible that Consumeraffairs.com is an information content provider within the meaning of the Communications Decency Act.
However, as to the remaining eight posts involving fictitious customers, which Nemet claims the website itself fabricated in order to attract other consumer complaints, I disagree and must respectfully dissent.
The majority opinion correctly sets forth the relevant legal framework. The Communications Decency Act offers website providers a limited form of immunity from civil lawsuits. Specifically, the act provides that an “interactive computer service,” or website host, may not be liable under state law for website content posted by a third party. 47 U.S.C.A. § 230(c), (e)(3) (West 2001); Zeran v. Am. Online, *261 Inc., 129 F.3d 327, 330 (4th Cir.1997). A website host loses its immunity under § 230, however, if it is responsible, “in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.” 47 U.S.C.A. § 230(f)(3) (West 2001).
In addition, as the majority opinion points out, the current federal pleading standards mean that in order to pass muster a claim must be “ ‘plausible on its face,’ ” which in turn requires that a complaint’s facts create more than the “sheer possibility” of a defendant’s liability. Ashcroft v. Iqbal, — U.S. -, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
This means in the context of § 230 that in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Nemet’s complaint must contain sufficient factual allegations to allow for the plausible conclusion that Consumeraffairs.com was responsible, in whole or in part, for the creation of the Internet posts in question.
In disagreement with the majority, I believe that the allegations of the Amended Complaint adequately set forth a claim that Consumeraffairs.com was responsible for the eight posts from fictitious customers.
In the first place, we are required to accept as true, at least at this stage of the case, Nemet’s allegation that these eight posts did not represent real customers. Nemet alleged that it documented each vehicle sale with forms that give the customer’s full name, address, description of the vehicle sold, and the date of sale, as well as other information. Each of the eight posts described in the Amended Complaint gave the first name and hometown of the putative customer as well as the make and model of the vehicle sold by Nemet. All of the posts were dated and all but one set forth the alleged date of the sale. In spite of Nemet’s careful documentation of each sale and comparison with the information provided in the posts, Nemet was unable to connect any of these posted complaints with a real transaction.
Moreover, these were not the sole pertinent factual allegations. Nemet also alleged the following in its Amended Complaint:
(1) The eight complaints at issue were never reported to the New York City Department of Consumer Affairs, which, according to Nemet, is responsible for policing consumer issues where Nemet does business, and which has recently pursued highly publicized consumer litigation against other car dealers. (Am. Compilé 12-14, J.A. 49.);
(2) Consumeraffairs.com’s website encourages consumers to complete complaint forms, but the website does not contain a place for positive reviews. (Am. Comply 28, J.A. 53.);
(3) The website “entices visitors with the possibility of participating in a class-action lawsuit, with the potential for a monetary recovery,” by promising to have “class action attorneys” review all submitted complaints. (Am.ComplJ 29, J.A. 53.);
(4) Consumeraffairs.com earns revenue by selling ads tied to its webpage content, including the content posted by consumers. (Am.Compl.lIfl 21, 22, J.A. 51.);
(5) Consumeraffairs.com wrote derogatory statements about Nemet on the website in connection with the alleged consumer complaints, such as the following:
Here’s what Nemet says about itself on its Web site: “The Nemet Auto Group is an automotive marketing organization *262 led by the Nemet family since 1916. For 86 years, the Nemet family has represented many of the world’s largest and most prestigious automobile manufacturers selling well over half a million cars internationally.”
Sounds great, but some of Nemet’s customers aren’t so impressed, as the complaints in this section indicate. A selection of assorted recent complaints appears below, while categorized beefs are listed to the right.
... The Nemet complaints pretty well cover the territory — everything from prices engraved in sand to advertising that overlooks certain crucial elements. It’s also interesting to see how Nemet responds when consumers take the trouble to drag them into court.
... [I]f a dealer advertisers a car at a certain price, it is obligated to honor that price unless it has clearly disclosed that the price applies only under certain conditions. Does Nemet know this?
(Am.Compl.lffl 33-35, J.A. 54-56.).
While Twombly and Iqbal announced a new, stricter pleading standard, they did not merge the pleading requirements of Rule 8 with the burden of proof required for summary judgment. In fact, the Court in Twombly stated that “[ajsking for plausible grounds to infer” a claim’s existence “does not impose a probability requirement at the pleading stage.” Twombly, 550 U.S. at 556, 127 S.Ct. 1955. The plausibility standard “simply calls for enough fact to raise a reasonable expectation that discovery” will lead to information supporting the plaintiffs claim. Id. Nemet’s pleading accomplishes this. By stating sufficient factual assertions, Nemet has created the reasonable inference that Consumeraffairs.com wrote the eight posts to attract additional complaints.
It is true that there may be alternative explanations for these posts that show that they are not attributable to Consumeraffairs.com. Nemet may have simply overlooked eight actual customers in its review of the company sales documents. The fictitious posts may have come from mischief makers unrelated to Consumeraffairs.com, or from real consumers who wished to remain anonymous by falsifying the details of their transactions. But I don’t believe that any of these alternatives are any more plausible than Nemet’s claim.
It cannot be the rule that the existence of any other plausible explanation that points away from liability bars the claim. Otherwise, there would be few eases that could make it past the pleading stage. Indeed, as Iqbal teaches, it is only where there are “more likely explanations” for the result that the plausibility of the claim is justifiably suspect. Iqbal, 129 S.Ct. at 1951.
While the present federal pleading regime is a significant change from the past, it remains true that a plaintiff in federal court need not allege in its initial pleading all of the facts that will allow it to obtain relief. Otherwise, the summary judgment process under Rule 56 would have little meaning. Of course, I don’t know whether Nemet could have ultimately prevailed on its claim that Consumeraffairs.com made up the eight posts in question, or even if it could have withstood a motion for summary judgment, but under the circumstances it ought to have been allowed to attempt to prove its case. For that reason, I respectfully dissent.